CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

Michelle M. BURNETTE, Yolanda C. Jenkins, Vivian V. Nicholson, Theresa A. Roth, and Patricia Wheeler, Defendants-Appellants,†

Tanya M. BEAN, Marvin T. Blount, Tracy A. Blue, Jansee R. Boens, Schonda F. Butcher, Teresa M. Chojnacki, Deborah A. Darby, Ruthann Dzibinski, Carmen M. Estrada, Gloria J. Fulford, Marsha A.Greene, Patricia A. Greer, Kelly J. Hirschfied, Lora I. Hudson, Faith A. Jefferson, Sandra Jefferson, Precious L. Johnson, Candice K. Kane, Mary B. Koller, Linda J. Kroeck, Tammie L. Lasko, Therese S. Lumley, Annette M. Matthews, Christine S. McEvoy, Evelyn Melendez, Joy R. Nevels, Juantean L. Nolan, Valerie D. Pagan, June M. Paquette, Victoria L. Pharr, Linda A. Pionter, Michelle Profit, Linda M. Prophett, Carmen Rodriguez, Kim M. Rossettie, Lisa A. Ruiz, Lynette D. Sechrest, Mary L.Sandlin, Tanya R. Sears, Cynthia F. Singh, Melissa A. Tavidian, Trina M. Thomas, Maria J. Vazquez, Denise A. West, Bobbie J. Williams, Tonni R. Wilson, Terry A. Wuerzberger, Linda M. Yoebstl, Christine Adams, Lakesa L. Anderson, Doreen Arvelo, Veronica L. Batton, Melissa Berry, Patricia Bur-

---

† Petition to review denied 12-17-01.

gess, Cynthia M. Cook, Pamela D. Cook, Lillian J. Feliciano, Rose M.Garcia, Tara Greenwood, Marie T. Guyton, April R. Hancock, Lacretha Jackson, Gerry S. Kearney, Terri J. Martin, Lisa A. Mayes, Theresa A. Northern, Otis Rawls, Jr., Yoland D. Redditt, Linda D. Robinson, Carmen M. Taylor, Debra L. Williams, Luberta Williams, Loteria H. Willis, Marsha Vann, Diane M. Williams, Genoria Morris, Carol R. Titra, Jacqulynn E. Frazer, Sandra Butler, Debbie R. Eichorn, Darlene M. Manns, Lisa M. Gardner, Danita L. Henderson, Genice B. Jackson, Jennifer R. Wright, Carolyn A. Wynos, Debra S. Blachowski, Helaine D. Burks, Dawn M.Camus, Karen A. Chirpke a/k/a Karen A. Zembrzuwski, Jennifer L. Curtis, Sheila C. Hinton, Patricia D. Holmon, Gerry S. Kearney, John W. Keepers, Joy L. Landgraf, Polly A. Lausch, Lara L. Lewis, Cheryl A. Marunowski, Patricia A. McCoy, Evelyn Melendez, Floura L. Owens, Lorraine Perry, Sheila M. Pocan, Helen M. Poe, Cheryl Y. Pope, Laurie A. Powell, Kimberly D. Prather, Lucy M. Santana, Manessa L. Smith, Rosanna M. Wheeler, Marie A. Wison a/k/a Marie Kosmicki, and Sharon L. Winzer, Defendants.

Court of Appeals

*No. 00–2308. Submitted on briefs September 4, 2001.—Decided October 9, 2001.*

2001 WI App 258

(Also reported in 637 N.W.2d 447.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Pamela S. Moorshead* of *Buting & Williams, S.C.*, Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *David R. Halbrooks* and *Genevieve O'Sullivan-Crowley*, assistant city attorneys, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Michelle Burnette, Yolanda Jenkins, Vivian Nicholson, Theresa Roth, and Patricia Wheeler appeal from a judgment permanently enjoining them from engaging in prostitution-related activities within certain specified areas in the City of Milwaukee; namely:

- "Engaging in, beckoning to stop, or engaging male or female passersby in conversation, or stopping or attempting to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture, or yelling in a loud voice";

- "Having or offering to have or requesting to have nonmarital sexual intercourse for anything of value; committing or offering to commit an act of sexual gratification, in public or private, involving the sex organ of one person and the mouth or anus of another for anything of value; masturbating a person or offering to masturbate a person for anything of value; and committing or offering to commit or requesting to commit an act of sexual contact for anything of value";

- "Walking off public sidewalks into the City streets to meet occupied motor vehicles to discuss any activity listed [in the immediately preceding bulleted paragraph] or to direct the ve-

828

hicle operator acting in concert with the [person subject to the injunction] to a destination other than the point of initial contact between the [person subject to the injunction] and the operator such as directing the vehicle off of a high volume traffic street to a more secluded street in which the [person subject to the injunction] walks to the vehicle and then enters the vehicle at the new vehicle location";

- "Waiting at bus stops for more than one cycle of busses [sic] or waiting at bus stops with no money or bus transfers on their person or standing at pay phones for lengthy periods of time without making an actual telephone call";

- "Loitering in doorways of businesses whether open or closed, sitting on the porch or standing anywhere on private residential property without the permission of the property owner or a legal resident of the property";

- "Standing, sitting, walking, driving, gathering or appearing anywhere in public view within 25 (twenty-five) feet of any other [person subject to the injunction] engaged in any of the above listed activities."

The injunction was entered by the trial court on an amended complaint filed by the City alleging that the appellants were prostitutes and that their prostitution activities in specified areas were a "public nuisance" under Wis. Stat. § 823.02. Section 823.02 authorizes a "city" to bring "[a]n action to enjoin a public nuisance."[1]

---

[1] The original complaint named seventy-five persons, plus "Jane Doe(s) and John Doe(s)," but not the appellants as defendants.

¶ 2. The case was decided on summary judgment. In support of its motion for summary judgment, the City submitted the following evidentiary material:

1. An affidavit executed in February of 2000 by a Milwaukee police officer assigned to the Vice Control Division averring that:

- the appellants had been previously arrested for prostitution;

- that he had seen Burnette "approximately six times in the past year loitering and flagging down cars"; and

- that "[o]n several of these occasions, Ms. Burnette fled the scene after recognizing me while I was working as an undercover officer."

None of these averments was disputed by the appellants.

2. An affidavit executed in July of 1998, by the same officer averring that:

- the police department gets "public complaints regarding street prostitution," including "complaints about prostitution on the City streets" and "complaints about prostitutes working on adjoining properties or even on the complainant's own property";

- "the type of enforcement required to control street prostitution" is dangerous because the "officers are required to work singularly undercover" and cannot "wear bullet proof vests or sidearms while interacting with the street prostitutes" because

830

the officers "are required to appear as prostitution customers";

- street prostitutes frequently "carry weapons," including "sharpened metal objects," knives with long blades, and "razor blades," and the officers are vulnerable to attack because they are undercover.

None of these averments was disputed by the appellants.

3. The testimony from a City police captain in charge of the Vice Control Division. The captain told the trial court that when he drives down streets in areas where his officers are operating, prostitutes, not aware that he is a police officer, try to get his attention by yelling or waiving at him, and, indeed, that some were "actually jumping up and down to gain [his] attention." He also testified that he "often" sees those whom he believes are "customers for prostitutes driving up and down the streets" and that they would drive "very slowly in the right hand lanes, constantly looking at the sidewalk, stopping, slowing down, when they see a single female walking." He said that he sees "the girls or ladies on the street sometime making the initial contact with the cars that are stopping and passing."

None of this testimony was disputed by the appellants.

¶ 3. The police captain also testified that he has "seen prostitutes that I've picked up standing at bus stops, standing at pay phones, acting like they're talking on the phone." He explained that they were "acting" because he never would see them "actually talking," but, rather, "be on the phone for like 45 minutes and just listening . . . constantly looking around." He never saw

831

them put any money into the coin operated telephones. He also told the trial court that the prostitutes would wait at bus stops, but never get on any of the buses, and that they would linger on private property, "standing in doorways, closed and open businesses."

None of this testimony was disputed by the appellants.

4. Testimony from a person who rehabilitates and manages rental property in one of the areas included in the injunction. He told the trial court that prostitution drives away prospective tenants who, when "they see prostitutes and drug addicts on the street ... won't even come in to see the apartments despite all the work we've done." He also testified that he loses tenants who have moved in because of prostitution activity in the area.

None of this testimony was disputed by the appellants.

5. Testimony from a woman who lives in one of the areas included in the injunction that she does not feel comfortable leaving her apartment without either her two large dogs or her boyfriend "because it's happened many, many times where I've been approached, asked what I will do for ten dollars, or just other basic questions about assuming that I'm a prostitute because of where I live, and because I'm on the streets."

None of this testimony was disputed by the appellants.

¶ 4. Although the appellants were joined as defendants after the trial court held the evidentiary hearing, and thus did not have the chance to either cross-examine or present evidence, they did not ask the trial court either to re-open the hearing or to hold a new hearing. Rather, they submitted affidavits executed by

832

two of them, Burnette and Jenkins, on March 2, 2000, as well as one executed by Eleanor Miller, Ph.D., an assistant professor of sociology and former chair of the sociology department at the University of Wisconsin- -Milwaukee.

¶ 5.　The affidavits of Burnette and Jenkins did not dispute any of the averments or testimony we have excerpted. Rather, they indicated that the injunction sought by the City would interfere with their ability to live their lives in peace and to interact with friends and family members. They both expressed concerns that they would violate the injunction if they spoke to someone who might be a prostitute even though they did not know it. They both also averred, in identical language: "I am confused by what the injunction requires of me." Burnette also explained that she knows that "many poor women in Milwaukee have had arrests for prostitution because they have no alternatives financially or were addicted to drugs or alcohol." They both indicated in their affidavits that once they were released from the Milwaukee County Jail, where they were at the time they executed the affidavits, that they did not intend to prostitute themselves again.[2]

¶ 6.　Dr. Miller has been studying prostitutes since 1978, and, according to her affidavit, wrote a nationally recognized treatise on prostitutes, *Street Woman*. Additionally, her affidavit establishes her expertise under WIS. STAT. RULE 907.02 in "social science methodology for qualitative field research." She did not dispute any of the City's evidentiary material that we have excerpted. Rather, she challenged the City's attempt to show a connection between prostitution and drugs, crime, and

---

[2] It is not clear from the appellate record why Burnette and Jenkins were in the Milwaukee County Jail on March 2, 2001.

disease. Additionally, Dr. Miller avers, contrary to the City's contention, that prostitutes do not act in concert.

¶ 7. For the reasons we explain below, we affirm in part, reverse in part, and remand with directions that the trial court modify the injunction.

**A.**

¶ 8. Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. WIS. STAT. RULE 802.08(2); *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Of course, "summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Thus, although the trial court may have relied on some of the evidentiary matters presented to it by the City that are disputed by Dr. Miller's affidavit, we decide this appeal only on the evidentiary record that is not disputed, bearing in mind that the ultimate decision whether to grant or to deny a requested injunction lies within the reasoned discretion of the trial court. *See State v. H. Samuels Co.*, 60 Wis. 2d 631, 635, 211 N.W.2d 417, 419 (1973) (whether to grant or deny request for injunction is discretionary); *State v. Seigel*, 163 Wis. 2d 871, 889, 472 N.W.2d 584, 592 (Ct. App. 1991) (trial court's discretionary determination whether to issue a nuisance-abatement injunction will be upheld on appeal

if it is "based upon the facts appearing in the record and in reliance on the appropriate and applicable law.").

¶ 9. Prostitution is illegal in Wisconsin. WIS. STAT. § 944.30.[3] Loitering or soliciting for purposes of prostitution is also illegal. WIS. STAT. § 947.02(3) (declaring that a person is guilty of a Class C Misdemeanor if he or she is "[a] prostitute who loiters on the streets or in a place where intoxicating liquors are sold, or a person who, in public, solicits another to commit a crime against sexual morality"). Injury to the public "in its civil or property rights or privileges or in respect to public health to any degree" constitutes a "public nuisance." *H. Samuels Co.*, 60 Wis. 2d at 638, 211 N.W.2d at 420. Although "equity will not enjoin a crime because it is a crime," the mere fact that acts that injure the public are criminal "does not bar injunctional relief." *Id.*, 60 Wis. 2d at 636, 211 N.W.2d at 419.

---

[3] WISCONSIN STAT. § 944.30 provides:

**Prostitution.** Any person who intentionally does any of the following is guilty of a Class A misdemeanor:

(1) Has or offers to have or requests to have nonmarital sexual intercourse for anything of value.

(2) Commits or offers to commit or requests to commit an act of sexual gratification, in public or in private, involving the sex organ of one person and the mouth or anus of another for anything of value.

(3) Is an inmate of a place of prostitution.

(4) Masturbates a person or offers to masturbate a person or requests to be masturbated by a person for anything of value.

(5) Commits or offers to commit or requests to commit an act of sexual contact for anything of value.

¶ 10. An injunction may be no more broad than is "equitably necessary." *Seigel*, 163 Wis. 2d at 890, 472 N.W.2d at 592. This is similar to the test that is also applied when constitutional rights are implicated: that the injunction may not burden those rights any more "than necessary to accomplish its goal," rather than the "strict scrutiny" test the appellants propose. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764–768 (1994) (speech).

### B.

¶ 11. The initial issues presented by this appeal are whether, based on the City's evidentiary submissions that have not been controverted, prostitution activities in the areas encompassed by the permanent injunction sufficiently injure the public to constitute a nuisance, and, if so, whether injunctive relief entered by the trial court was reasonably related to abatement of the nuisance. If these initial hurdles are cleared, we have to assess whether the injunction entered by the trial court deprived the appellants of their constitutional rights.

¶ 12. As we have seen, there is no dispute in this case:

- that prostitutes frequent the areas encompassed by the permanent injunction;

- that persons living and working in those areas have complained to the police department about the prostitution-related activity, and are, in fact, harmed by that activity;

- that although it is illegal for a person to solicit or commit acts of prostitution, and

to loiter on streets for purposes of prostitution, undercover law-enforcement officers face significant hazards in their efforts to gather evidence that persons whom they suspect of engaging in prostitution are, in fact, violating the anti-prostitution laws.

Further, we may take judicial notice of the harm that endemic prostitution activity has on a community. *See State v. J.C. Penney Co.*, 48 Wis. 2d 125, 155, 179 N.W.2d 641, 657 (1970) (appellate court may take judicial notice of the extent of practice that harms the public) ("widespread use of the revolving charge account and of the large number of Wisconsin citizens affected by these practices"); WIS. STAT. RULE 902.01(3) (court may take judicial notice "whether requested or not"); WIS. STAT. RULE 902.01(6) ("Judicial notice may be taken at any stage of the proceeding.").

¶ 13. Although it is true, as the appellants argue, that the infusion of prostitution in the affected areas can, on one level at least, be addressed by the enforcement of the laws making that and related activity illegal, the difficulties and dangers inherent in that route make injunctive relief appropriate because enforcement of the injunction can be done by police officers in uniform with adequate means of self-protection. Additionally, although the individual appellants are but a small part of the problem, the same is true of all the persons prostituting themselves in the affected areas. A rule that prohibited injunctive relief against a person acting independently but whose independent acts when combined with the independent acts of others created a public nuisance, merely because the person was acting independently, would render this type of public nuisance immune to effective redress.

Accordingly, the trial court had the authority to issue an injunction to abate the appellants' role in what the undisputed evidentiary submissions prove is a public nuisance.

## C.

¶ 14. We now turn to the appellants' argument that the permanent injunction violates their constitutional rights. They contend that specific parts of the injunction are unconstitutionally vague, that they violate their right of association, that they violate their rights to freedom of speech and assembly, and that they violate their right to freedom of movement in public places. We address their contentions in turn and assess whether the burdens imposed by parts of the injunction they attack are greater than they need be, which, as noted, is the standard we must apply. *See Madsen*, 512 U.S. at 764–768. We do not, however, discuss whether parts of the injunction that appellants have not challenged specifically and targeted with developed argument violate any of their rights. *See Reiman Assocs. v. R/A Adver. Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (contentions not briefed are waived); *Barakat v. Dep't of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398–399 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments).

1. *Vagueness.*

¶ 15. Appellants contend that the parts of the injunction that prohibit loitering in the doorways of the private property of others, that prohibit loitering at bus stops and pay phones, and that impose a twenty-five foot no-intrusion radius from any other person who may be violating any provisions of the injunction are

838

unconstitutionally vague. We agree in part and disagree in part with their contentions.

■■■■■

¶ 16. We have discussed previously the standards that determine whether governmental regulation of conduct is impermissibly vague:

> A law regulating conduct must give adequate notice of what is prohibited, so as not to delegate "basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). Thus, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). Although the enactment must have "a reasonable degree of clarity," *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984), exacting precision is not required, *Grayned* , 408 U.S. at 110, unless the enactment infringes rights that are specifically protected by the constitution, such as those of free speech and association protected by the First Amendment, *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). In short, if a statute or ordinance does not directly affect constitutionally-protected interests, we may not hold it facially-invalid for vagueness even though "doubts as to the applicability of [the challenged] language in marginal fact situations may be conceived." *See United States v. Powell*, 423 U.S. 87, 93 (1975).

*Dog Fed'n of Wisconsin, Inc. v. City of S. Milwaukee*, 178 Wis. 2d 353, 359–360, 504 N.W.2d 375, 377–378 (Ct. App. 1993) (alteration in original). Both parties recognize that these principles apply to injunctions as well as statutes or ordinances.

a. *Loitering in doorways*. Contrary to the appellants' contention, there is nothing vague about the injunction's prohibition against "[l]oitering in doorways of businesses whether open or closed, sitting on the porch or standing anywhere on private residential property without the permission of the property owner or a legal resident of the property." The prohibitions are clear and easy to obey. *See also City of Milwaukee v. Nelson*, 149 Wis. 2d 434, 447, 439 N.W.2d 562, 566–567 (1989) (recognizing, in the context of a challenge to the constitutionality of an anti-loitering ordinance, that the ordinance was constitutional because: "One is not in violation of the ordinance by just 'loitering.' Rather, one must be loitering or prowling 'in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity.' ").

b. *Loitering at bus stops or pay phones*. Similarly, we reject appellants' argument that the injunction's prohibition against "[w]aiting at bus stops for more than one cycle of busses [*sic*] or waiting at bus stops with no money or bus transfers on their person or standing at pay phones for lengthy periods of time without making an actual telephone call" is impermissibly vague. Although appellants quibble about what "one cycle" of buses means, the prohibition in this portion of the injunction also gives fair notice and is easy to obey.

c. *Twenty-five foot restriction*. Appellants also challenge the provision of the injunction that prohibits them from "[s]tanding, sitting, walking, driving, gathering or appearing anywhere in public view within 25 (twenty-five) feet of any other [person subject to the injunction] engaged in any of the [activities proscribed by the injunction]." We agree that this provision does

not give to the appellants fair warning of prohibited conduct. There is nothing in the record that indicates that any of the appellants are sufficiently familiar with all those subject to the injunction so that compliance with this provision would not be a haphazard, guessing adventure. Indeed, Jenkins's affidavit avers that she does "not know more than a few of the defendants to this action." The City does not dispute this. Similarly, Burnette's affidavit avers that she is "afraid of being arrested [for violating the injunction] by talking to someone who may, without my knowledge, be a prosti-tute." The City also does not dispute this. Burnette additionally avers that she is "also afraid of being arrested for purely legal social and personal conversa-tion with friends who may or may not be defendants in this injunction action." The City does not dispute this either. Accordingly, on remand, the trial court should strike this prohibition from the permanent injunction.

2. *Alleged deprivation of specific constitutional rights.*

■

¶ 17. Appellants argue that portions of the injunc-tion violate their specific rights to associate with family and friends, their rights to freedom of speech and assembly, and their right to freedom of movement in public places. As with their challenge to the injunction on vagueness grounds, we agree in part, and disagree in part.

a. *Right of association.* There is no doubt but that members of our society have a constitutional right to associate with family and friends without undue re-striction. The right of association is generally broken down into two main elements: 1) the right of intimate association, which encompasses such family-type rela-

tionships as marriage, cohabitation, and procreation; and 2) the right of expressive association, which includes political-type activity. *Roberts*, 468 U.S. at 617–626.

¶ 18. Appellants challenge that portion of the injunction that prohibits them from "[e]ngaging in, beckoning to stop, or engaging male or female passersby in conversation." They contend that this restriction would prohibit them from talking to their friends and relatives. We agree that this broad restriction, as phrased, is susceptible to this interpretation. As such, it is broader "than necessary to accomplish its goal" of suppressing prostitution-related activities. *See Madsen*, 512 U.S. at 764–768. Accordingly, on remand, the trial court should modify this aspect of the permanent injunction to ensure that it does not encompass appellants' relatives and friends (that is, persons with whom appellants had social relationships before the activity described by the restriction).

¶ 19. Appellants also challenge the restriction insofar as it applies to strangers as infringing on their right to expressive association. Appellants point to nothing in the record however, that indicates in any way that prohibiting them from approaching strangers on the street prevents them from doing anything other than soliciting for purposes of prostitution; there is *no* evidence in the record that appellants seek to approach and converse with strangers as part of any group effort to accomplish any of the goals protected by the right of expressive association—the "wide variety of political, social, economic, educational, religious, and cultural"

activities in which groups engage. *See Roberts*, 468 U.S. at 622. Thus, this aspect of appellants' challenge is without merit.

b. *Right of free speech.* Appellants challenge those parts of the injunction that prohibit them from "[e]ngaging in, beckoning to stop, or engaging male or female passersby in conversation" and from "stopping or attempting to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture, or yelling in a loud voice" as violating their First Amendment right to free speech. These challenges are without merit. There is no evidence in the record that such actions—insofar as they are directed to strangers— have any purpose *other* than the solicitation for prostitution, which is specifically prohibited by WIS. STAT. §§ 947.02(3) (unlawful for a person to "in public, solicit[] another to commit a crime against sexual morality") and 944.30(5) (unlawful to either "offer[]" or "request[]" another person to commit various sex acts "for anything of value"). Carving away the unlawful speech of soliciting for purposes of prostitution, the prohibition against approaching and talking to strangers is *content neutral,* and, indeed, is not a restriction on speech *qua* speech but rather on *conduct. See State v. Zwicker*, 41 Wis. 2d 497, 511–513, 164 N.W.2d 512, 519–520 (1969) (recognizing that conduct may be prohibited even though tinctured with elements of speech); *cf. Madsen,* 512 U.S. at 773–774 (government may not prohibit "*all* uninvited approaches" to strangers when restriction is based on content of speech rather than conduct).

¶ 20. Prohibiting persons from attempting to stop cars by waiving and yelling (other than an attempt to get the attention of a taxicab driver—an argument that appellants do not make but, as seen in footnote four, we accommodate), is akin to the law against disorderly

conduct, which prohibits "boisterous, unreasonably loud or otherwise disorderly conduct" in "public" places "under circumstances in which the conduct tends to cause or provoke a disturbance," WIS. STAT. § 947.01.[4] The disruptive nature of either stopping or trying to stop drivers (other than those driving taxicabs) "by hailing, waving of arms or any other bodily gesture, or yelling in a loud voice," and the concomitant right of government to prohibit that conduct, validates this aspect of the injunction, especially, as noted, when stripped of the unlawful speech of soliciting for purposes of prostitution, the prohibition is *content neutral. See Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (government has "'a substantial interest in protecting its citizens from unwelcome noise'") (quoted source omitted); *Zwicker*, 41 Wis. 2d at 511–513, 164 N.W.2d 519–520; *cf. Gresham v. Peterson*, 225 F.3d 899, 904–906 (7th Cir. 2000) (upholding ordinance limiting begging in public places and banning all "aggressive panhandling" despite the recognition that "[b]eggers at times may communicate important political or social messages in their appeals for money, explaining their conditions related to veteran status, homelessness, unemployment and disability, to name a few.") ("The city

---

[4] Appellants have not asserted that this portion of the injunction interferes with their ability to hail taxicabs that may be cruising the streets looking for fares. We may, however, as noted in the main body of this opinion, take judicial notice "whether requested or not" of matters that are "generally known within the territorial jurisdiction of the trial court." WIS. STAT. RULE 902.01(2)(a), 902.01(3), & 902.01(6). On remand, the trial court should modify this portion of the injunction to permit the appellants to hail taxicabs licensed pursuant to the authority granted by WIS. STAT. § 349.24.

has a legitimate interest in promoting the safety and convenience of its citizens on public streets.").

¶ 21. Subject to footnote four, the restrictions here are no more restrictive "than necessary to accomplish [their] goal" of suppressing prostitution-related activities. *See Madsen*, 512 U.S. at 764–768.

c. *Right of travel.* Appellants also challenge the restrictions on: attempting to speak to strangers who are either on foot or in cars, being within twenty-five feet of other persons subject to the injunction, and loitering at pay phones or bus stops as abridging their right to travel. We have already indicated that the twenty-five-foot restriction is unconstitutionally vague; accordingly, we do not discuss appellants' alternative argument in connection with that aspect of the injunction. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground"). In connection with the bus-stop, pay-phone, and uninvited-approaches-to-strangers restrictions, the injunction does not prevent the appellants from travelling anywhere; they may not accost strangers in the manner enjoined, however, and they are perfectly free to use bus stops and pay phones for the intended use of those facilities.

*By the Court.*—Orders and judgment and affirmed in part; reversed in part and cause remanded for further proceedings.