**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2149-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CF168**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

BRANDIN L. MCCONOCHIE,

    DEFENDANT-APPELLANT.

---

        APPEAL from a judgment and an order of the circuit court for Green Lake County: MARK T. SLATE, Judge. *Affirmed*.

        ¶1    REILLY, P.J.[1]    Brandin L. McConochie appeals from a judgment convicting him of three counts of lewd and lascivious behavior, as a repeater, and from an order denying his postconviction motion. McConochie argues a condition

---

        [1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

of probation prohibiting him from traveling within a finite area (where his victims reside) is an unconstitutional infringement on his right to travel and associate. As the court's banishment of McConochie from the restricted area is narrowly drawn, protects his victims and the public, and furthers McConochie's rehabilitative needs, we affirm.

*Facts*

¶2      McConochie pled no contest to three counts of lewd and lascivious behavior as a repeater pursuant to a plea agreement; two counts of exposing genitals with a hate crime enhancer were dismissed and read in. The charges stemmed from three incidents over two days in which McConochie pulled his vehicle alongside Amish buggies and exposed his genitals to the occupants within. Police were led to McConochie via his GPS ankle bracelet, which McConochie was required to wear as a result of three prior convictions for second-degree sexual assault of a child, a previous conviction for exposing genitals to a child, and two convictions for felony bail jumping. McConochie, who was thirty-two years old, had spent most of his twenties in prison and committed the present crimes within a relatively short time after being released.[2]

¶3      The plea agreement included a joint sentencing recommendation of two years' probation, sex offender treatment, and no contact with the victims—the Amish community. The court adopted the parties' joint recommendation but added a condition that McConochie could not enter a clearly delineated area where the

---

[2] McConochie was on extended supervision at the time of these crimes, was subsequently revoked, and is subject to lifetime GPS monitoring.

Amish live.[3] The court found that McConochie's crimes were "clearly targeted at Amish people, who live in that area," rather than targeting any specific Amish individual. The court considered McConochie's need to be in the area before setting the boundaries. At sentencing, McConochie only objected to the banishment area on the grounds that he would not be able to visit his father's grave. The court acknowledged the restriction would prevent McConochie from visiting his father's grave for the two-year period of probation.

¶4 McConochie filed a postconviction motion alleging the banishment was an unconstitutional violation of his right to travel and associate. In addition to the inability to visit his father's grave, McConochie argued that his mother was going to will a home to him that was located within the banishment area and he wanted to eventually live in it. McConochie also told the court that his stepfather had a home in the banishment area that he could live in. The court considered McConochie's future living arrangements to be "speculative" and denied the motion.[4] McConochie appeals.

*Banishment as a Condition of Probation*

¶5 "Sentencing courts have wide discretion and may impose any conditions of probation or supervision that appear to be reasonable and appropriate." ***State v. Stewart***, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165. We review banishment conditions under the erroneous exercise of discretion standard

---

[3] The circuit court indicated that the restricted area was north of Highway 33, which is in Columbia County; east of Highway 22, which is in Columbia and Marquette counties; west of Highway 73, which is in Green Lake and Columbia counties; and south of Highways H and BH from Highway 73 to Highway 22, which extends from Green Lake County to Marquette County.

[4] The circuit court clarified at the hearing that McConochie was allowed to travel on the roadways the court mentioned when it drew up the restricted area, but he could not go beyond those roads into the restricted area.

to determine their validity and reasonableness measured by how well they serve the objectives of rehabilitation and protection of the state and community interest. *Id.* "The conditions may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation." *Id.*, ¶12. "Convicted felons do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime." *Id.* (citing *State v. Oakley*, 2001 WI 103, ¶17, 245 Wis. 2d 447, 629 N.W.2d 200). We review whether a condition of probation violates a defendant's constitutional rights de novo. *Stewart*, 291 Wis. 2d 480, ¶12. Limits placed on a defendant's movement in a geographical location, while clearly restricting a defendant's rights to travel and associate, are not per se unconstitutional.[5] *See id.*, ¶13; *Predick v. O'Connor*, 2003 WI App 46, ¶18, 260 Wis. 2d 323, 660 N.W.2d 1. We analyze each case "on its own facts, circumstances and total atmosphere to determine whether the geographical restriction is narrowly drawn." *Predick*, 260 Wis. 2d 323, ¶18.

*Analysis*

¶6      The particular facts in this case clearly formed the basis for the circuit court's decision to impose a geographic restriction on McConochie. We accept the circuit court's finding that McConochie's crimes were targeted at the Amish community rather than any specific individual, and, accordingly, we conclude that the area drawn by the circuit court was not broader than necessary to protect the community and is reasonably related to McConochie's rehabilitation.

---

[5] The rights of travel and association are protected constitutional rights. *City of Milwaukee v. Burnette*, 2001 WI App 258, ¶17, 248 Wis. 2d 820, 637 N.W.2d 447; *Brandmiller v. Arreola*, 199 Wis. 2d 528, 537-39, 544 N.W.2d 894 (1996).

¶7     In support of his position that the banishment violates his constitutional rights, McConochie cites to *Stewart*, where this court held that a condition of probation banishing the defendant from the entire Richmond Township in Walworth County was overly broad. *Stewart*, 291 Wis. 2d 480, ¶¶14, 16. There, we explained that "[w]hile the geographical limitation certainly promotes the purposes of protecting the victims in this case and rehabilitating Stewart, it is broader than necessary to accomplish those purposes," finding that the no-contact provision "already offers protection to his victims." *Id.*, ¶¶16-17. We disagree that the result in *Stewart* necessitates a reversal in this case. As the court explained in *Stewart*, "the majority of Stewart's inappropriate, criminal and threatening behavior took place in and around his home. It was directed towards his wife, children and neighbors and not the Richmond township community at large." *Id.*, ¶16 (footnote omitted). In contrast, McConochie's conduct in this case was in fact directed at an entire community, not specific individuals or specific locations.

¶8     Here, the no-contact order with the Amish community alone is not a sufficient protection for McConochie's victims because, as the State explained, "the crimes were opportunistic and targeted toward any unfortunate occupant of an Amish buggy." McConochie's crimes took place along the roadway within the Amish community as he came upon an Amish buggy, not at a specific location or with specific individuals as in *Stewart*. A simple no-contact order would be ineffective under the circumstances of McConochie's crime. We agree with the State that "[t]o permit McConochie to travel within the area of the Amish community would be to set up the exact conditions allowing him to engage in identical criminal conduct in the future." *See Predick*, 260 Wis. 2d 323, ¶21 (explaining that the defendant's banishment from Walworth County was appropriate as "[a]n area smaller than the county would provide her with too many

opportunities to meet up with her victims"). The court noted, and we agree, that it imposed the banishment for McConochie's rehabilitation in its discretion so as to ensure that he would not be in the area or community in which he engaged in his lewd and lascivious behavior.

¶9 Further, we note that McConochie's crimes were committed while he was wearing a GPS ankle bracelet and on extended supervision, suggesting McConochie's inability to conform his conduct during extended supervision and a need for a stronger deterrent of his criminal proclivities to aid his rehabilitation. *See id.*, ¶1 (noting the defendant's "past utter disregard for less intrusive orders" as a reason her "victims needed a 'zone of protection'").

¶10 We conclude the circuit court drew the restricted area as narrow as possible to encompass the entire Amish community. McConochie argues that his crimes did not take place outside Green Lake County, so the restricted area should not extend beyond its borders. As we already addressed, McConochie's crimes were directed at the entire Amish community, and although his crimes took place in Green Lake County, there is no indication that McConochie's victimization of the Amish community was directed only at residents of specific counties. As Deputy Matthew Vande Kolk of the Green Lake County Sheriff's Office testified, the restricted area, which is mainly located in the southwest corner of Green Lake County but spills over into two neighboring counties, "includes all active Amish residences in Green Lake County" and "encompasses a good portion of the Amish community in those [two neighboring] counties, as well." McConochie's crimes took place within the confines of this area, and these boundaries were narrowly drawn to serve its purpose.

¶11    The circuit court also considered McConochie's need to be in the area. At sentencing, the court adjusted the boundaries of the restricted area to allow McConochie to visit his mother's home. McConochie also told the court that he would be unable to visit his father's grave; the court considered this a cost of agreeing to probation and told McConochie that he could reject probation if he did not agree with the geographical restriction on his travel. McConochie did not reject probation at sentencing. Later, in McConochie's postconviction motion, he argued that his mother had a home located within the banishment area, which was currently being rented to someone else, and that his stepfather also had a home in the restricted area that he could live in. Prior to McConochie being sentenced to prison, he was residing with his mother in her home, not in either of these two residences. We agree with the court's reasonable assessment that the possible future living arrangements are "speculative" and do not impact our analysis of whether the restriction is overly broad and reasonably related to McConochie's rehabilitation.

*Conclusion*

¶12    In summary, as the geographical restriction was narrowly drawn for the protection of the public, was not overly broad, considered McConochie's need to be in the banishment area, and was reasonably related to McConochie's rehabilitation, it is not an unconstitutional restriction on McConochie's right to travel and associate. We affirm the decision of the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

7