**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.       2018AP2355-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2014CF5317

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

WILLIAM FRANCIS KUEHN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:   ELLEN R. BROSTROM and JEFFREY A. WAGNER, Judges. *Affirmed*.

Before Brash, P.J., Fitzpatrick and Donald, JJ.

¶1      FITZPATRICK, J. After guilty pleas, William Kuehn was convicted in the Milwaukee County Circuit Court of five counts of possession of

child pornography pursuant to WIS. STAT. § 948.12(1m) (2013-14).[1] Ten counts of possession of child pornography were dismissed by the State and read in at the time of Kuehn's sentencing. The trial court sentenced Kuehn to five consecutive terms of imprisonment.[2] In addition, pursuant to WIS. STAT. § 973.042(2), the trial court imposed a $500 child pornography surcharge against Kuehn for each of the images which formed the bases for the five counts of which he was convicted and for each of the images which formed the bases for the ten counts which were dismissed and read in at sentencing. The trial court also barred Kuehn, during the term of his extended supervision, from having any contact with his girlfriend.

¶2 In postconviction motions,[3] Kuehn argued that: (1) he should be allowed to withdraw his guilty pleas because his trial counsel was constitutionally ineffective; (2) the trial court erred in imposing the child pornography surcharge for each of the ten images which formed the bases for the read-in counts; and (3) the trial court impermissibly infringed on Kuehn's constitutional right to freedom of association by barring contact with Kuehn's girlfriend during his term of extended supervision. The postconviction court denied each of Kuehn's motions. Kuehn appeals and we affirm.

**BACKGROUND**

¶3 The following material facts are not disputed.

---

[1] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

[2] Judge Ellen R. Brostrom accepted Kuehn's guilty pleas and pronounced sentence. We will refer to Judge Brostrom as the "trial court."

[3] Judge Jeffrey A. Wagner decided Kuehn's postconviction motions. We will refer to Judge Wagner as the "postconviction court."

¶4    Kuehn was charged, pursuant to WIS. STAT. § 948.12(1m), with fifteen counts of possession of child pornography. The criminal complaint alleged that images which showed children engaged in sexual activity were located on a cell phone owned by Kuehn. After pretrial proceedings, Kuehn pleaded guilty to five counts of possession of child pornography, and the State dismissed and read in to the record the ten remaining counts of possession of child pornography.[4]

¶5    At a later sentencing hearing after the preparation of a Presentence Investigation Report, the trial court sentenced Kuehn to four years of initial confinement and four years of extended supervision on each count, consecutive to each other, for a total of twenty years of initial confinement and twenty years of extended supervision. The trial court also determined that each of the fifteen images which formed the bases for the five counts to which Kuehn pleaded guilty, and the ten read-in counts, were "associated with the crime." Based on that determination, and pursuant to WIS. STAT. § 973.042(2), the trial court imposed a $500 child pornography surcharge for each image, totaling $7500.[5] Further, the

---

[4] At the plea hearing, Kuehn told the trial court the following, among other things:

> THE COURT: Your addendum says that you read the Criminal Complaint and Counsel read it to you. Is that correct?
>
> THE DEFENDANT: Yes.
>
> ….
>
> THE COURT: And are you pleading guilty to these five counts because you are in fact guilty of all five of them?
>
> THE DEFENDANT: Yes.

[5] WISCONSIN STAT. § 973.042(2) states:

> If a court imposes a sentence or places a person on probation for a crime under [WIS. STAT. §§] 948.05 or 948.12 and the person was at least 18 years of age when the crime was

(continued)

3

trial court ordered Kuehn to comply with conditions of extended supervision, including "that [Kuehn] have no contact with [J.S.]."[6]

¶6      Before the postconviction court, Kuehn filed three motions relevant to this appeal.  First, Kuehn sought to withdraw his guilty pleas on ineffective assistance of counsel grounds, alleging that his trial counsel was ineffective for not pursuing a third-party perpetrator defense so as to argue at trial that a person other than Kuehn committed the crimes for which Kuehn was convicted.  The postconviction court held a *Machner*[7] hearing.  At that hearing, Kuehn testified that, if his trial counsel had pursued a third-party perpetrator defense, he would not have pled guilty to the five counts of possession of child pornography.  Rather, Kuehn testified that he would have gone to trial on all fifteen counts.  Kuehn's trial counsel also testified at that hearing.  The postconviction court rejected Kuehn's argument and concluded that trial counsel was not ineffective for failing to pursue the third-party perpetrator defense.

¶7      Second, Kuehn requested that the judgment of conviction be amended because the images upon which the ten read-in offenses were based were not "associated with the crime" as that phrase is used in WIS. STAT. § 973.042(2) and, as a result, the trial court should not have imposed a child pornography

---

committed, the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime.  The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.

[6] In briefing in this court, J.S. is referred to by Kuehn as his "girlfriend."  J.S. is the mother of three children, one of which is Kuehn's son.  In briefing in this court, the parties refer to J.S. by initials, and we do the same.

[7] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

surcharge for those ten images. Again, the postconviction court rejected Kuehn's argument and denied the motion.

¶8    Third, Kuehn requested that the postconviction court remove the condition of extended supervision which forbids Kuehn from having contact with J.S. during his term of extended supervision. Kuehn asserted that this condition impermissibly infringes on his constitutional right to freedom of association. The postconviction court denied the motion, concluding that this condition of extended supervision was necessary for the rehabilitation of Kuehn and, as such, does not violate Kuehn's constitutional right.

¶9    Kuehn appeals. We will mention other material facts in the following discussion.

## DISCUSSION

¶10    We first discuss Kuehn's request for plea withdrawal based on purported ineffective assistance of his trial counsel. We then discuss the imposition of the child pornography surcharge for the images on which the ten read-in offenses were based. Finally, we consider whether the condition of extended supervision which bars Kuehn from contacting J.S. impermissibly infringes on Kuehn's constitutional right to freedom of association.

## I. Ineffective Assistance of Counsel.

¶11    Kuehn alleges that, in spite of his guilty pleas, he did not commit the five counts of possession of child pornography for which he was convicted.

Kuehn now claims that an acquaintance of his, W.S., committed these crimes.[8] Kuehn further contends that, if not for his trial counsel's failure to prepare a third-party perpetrator defense implicating W.S., he would not have pled guilty to the five counts of possession of child pornography. Rather, Kuehn alleges that he would have gone to trial on all fifteen counts of possession of child pornography. For these reasons, Kuehn argues that we should allow him to withdraw his guilty pleas.

¶12 We begin by discussing the standards governing plea withdrawal and ineffective assistance of counsel allegations. We then discuss our standard of review of the ineffective assistance of counsel claim.

### A. Standards for Plea Withdrawal and Ineffective Assistance of Counsel, and Standard of Review.

¶13 A defendant is entitled to plea withdrawal upon showing, by clear and convincing evidence, that "a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted); *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482. One method of showing a manifest injustice is by establishing that Kuehn was deprived of the effective assistance of trial counsel. *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44; *see State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

¶14 A defendant, such as Kuehn, alleging ineffective assistance of trial counsel has the burden of proving both that counsel's performance was deficient

---

[8] The State refers to this person as "W.S.," and we follow that lead.

6

and that he suffered prejudice as a result of that deficient performance. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).

¶15     To prove deficient performance, the defendant must show that his counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. *See **id.*** at 688. A defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***State v. Gutierrez***, 2020 WI 52, ¶46, 391 Wis. 2d 799, 943 N.W.2d 870 (quoting ***Strickland***, 466 U.S. at 689). This court's review is "highly deferential" and we do "not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." ***State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (alteration in original and internal quotation marks omitted) (quoting ***State v. Domke***, 2011 WI 95, ¶¶36, 49, 337 Wis. 2d 268, 805 N.W.2d 364).

¶16     A defendant also must affirmatively prove that the alleged deficient performance prejudiced him or her. ***Strickland***, 466 U.S. at 693. To satisfy the prejudice prong in the plea withdrawal context, the defendant must allege "that there is a reasonable probability that, but for the counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." ***Bentley***, 201 Wis. 2d at 312 (citation omitted).

¶17     On appeal, our standard of review is two-fold. This court accepts the trial court's findings of fact unless clearly erroneous; however, we review the trial court's application of constitutional principles to those facts *de novo*. ***State v. Harvey***, 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987). Therefore, the "legal conclusions of whether the performance was deficient and prejudicial based on

[the postconviction] factual findings … are questions of law independently reviewed by this court." ***State v. Delgado***, 194 Wis. 2d 737, 750, 535 N.W.2d 450 (Ct. App. 1995).

### B. *Denny* **Evidence.**[9]

¶18     A defendant, such as Kuehn, seeking to admit evidence that a known third party, such as W.S., may have committed a crime the defendant is charged with committing must satisfy all three prongs of ***Denny***'s "legitimate tendency" test. *See **State v. Wilson***, 2015 WI 48, ¶¶51-52, 362 Wis. 2d 193, 864 N.W.2d 52. First, the "motive" prong asks:  "[D]id the alleged third-party perpetrator have a plausible reason to commit the crime?" ***Id.***, ¶57.  Second, the "opportunity" prong asks:  "[D]oes the evidence create a practical possibility that the third party committed the crime?" ***Id.***, ¶58.  Third, the "direct connection" prong asks:  "[I]s there evidence that the alleged third-party perpetrator actually committed the crime, directly or indirectly?" ***Id.***, ¶59.

¶19     As part of our analysis, we will assume (without deciding) that the ***Denny*** evidence Kuehn now alleges against W.S. would have been admissible if Kuehn had gone to trial on the fifteen possession of child pornography charges brought against him.

¶20     With that background in mind, we now discuss whether trial counsel's performance was deficient.

---

[9] *See **State v. Denny***, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).  We use the term "***Denny*** evidence" as another term for third-party perpetrator evidence.

## C. Trial Counsel's Performance Was Not Deficient.

¶21    Kuehn alleges that his trial counsel's performance was deficient because counsel concluded that a third-party perpetrator defense against W.S. was untenable and such a defense would reflect poorly on Kuehn with the trial court. We reject Kuehn's allegation of deficient performance for the following reasons.

### 1. *Holmes* and *Wilson* Are Not Applicable.

¶22    Relying on *Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006) and *Wilson*, 362 Wis. 2d 193, ¶69, Kuehn asserts that trial counsel failed to pursue introduction of *Denny* evidence because counsel erroneously believed that such evidence was inadmissible based solely on the weakness of the evidence implicating W.S. as compared to the strength of the evidence of Kuehn's guilt. The State does not dispute that a defendant's due process right to a meaningful opportunity to present a complete defense is violated if, based solely on the fact that the evidence against the defendant is strong, a rule of evidence or case law bars from admission evidence that someone other than the defendant committed the charged crimes. *See Holmes*, 547 U.S. at 329-31 and *Wilson*, 362 Wis. 2d 193, ¶69.

¶23    Kuehn's reliance on *Holmes* and *Wilson* misses the mark. Initially, and contrary to Kuehn's assertion, Kuehn's trial counsel did not testify at the *Machner* hearing that the third-party perpetrator evidence regarding W.S. was *inadmissible* because there was strong evidence of Kuehn's guilt. In other words, contrary to Kuehn's assertions in this court, trial counsel did not testify that he thought that the third-party perpetrator evidence was "foreclose[d]."

¶24 Rather, counsel testified that the *Denny* evidence was so weak relative to the evidence of Kuehn's guilt that going to trial based on a weak theory of the case (in other words, a theory that W.S. possessed the child pornography instead of Kuehn) was bad strategy. Counsel testified: "[I]t seemed foolish to me, and it would be an untenable defense." He further testified: "And, you know, such a defense would put Mr. Kuehn in a bad light if he went to trial and then presented that type of defense." Therefore, there is no factual basis to support Kuehn's assertion that his trial counsel was deficient because counsel failed to understand Kuehn's constitutional rights as pronounced in *Holmes* and *Wilson*.

¶25 In addition, the holdings of *Holmes* and *Wilson* do not support Kuehn's deficient performance argument. We agree with the State that *Holmes* and *Wilson* do not compel counsel to pursue a third-party perpetrator after investigation and a determination by counsel that such a defense would be weak and counterproductive to counsel's overall strategy. *Holmes* and *Wilson* concern the admissibility of third-party perpetrator evidence, not the question before this court of whether counsel's strategy to not present such evidence was reasonable.

¶26 We now discuss whether trial counsel's strategy was "within the wide range of reasonable professional assistance." *See Gutierrez*, 391 Wis. 2d 799, ¶46 (citation omitted).

### 2. Counsel's Strategy Was Reasonable.

¶27 The postconviction court determined that a trial defense attempting to blame W.S. would lack merit and be poor strategy and, as a result, concluded that trial counsel's decision not to present *Denny* evidence was a reasonable conclusion and not deficient performance. We agree and, for the reasons discussed next, conclude that it was within the bounds of reasonable representation

for Kuehn's trial counsel to make the strategic decision not to present a weak defense regarding W.S. as the perpetrator.[10]

¶28    We start by considering the strength of the evidence against Kuehn. Because that information was relevant to then-pending motions, the State made a pretrial proffer to the trial court demonstrating the strength of the evidence incriminating Kuehn, including establishing Kuehn's connections to the particular Samsung phone which contained the child pornography images. We now summarize that evidence with the elements of the crime of possession of child pornography in mind.[11]

---

[10] During the plea colloquy, Kuehn acknowledged that he and his trial counsel "had pretty substantial conversations about whether to go to trial, how trial might work out, pros and cons of that and whether to take this plea." The postconviction court concluded, and Kuehn does not dispute, that Kuehn provided counsel with information regarding his belief that W.S. possessed the child pornography. Accordingly, trial counsel obtained discovery materials and additional information about W.S.'s purported culpability, and trial counsel discussed the possibility of filing a *Denny* motion for the admission of such evidence.

[11] WISCONSIN JI—CRIMINAL 2146A states in pertinent part:

**Elements of the Crime That the State Must Prove**

1. The defendant knowingly []possessed a recording[].… []"Possessed" means that the defendant knowingly had actual physical control of the recording.[]

….

[]It is not required that a person own a recording in order to possess it. What is required is that the person exercise control over the recording.[]

….

"Recording" means a reproduction of an image … or the storage of data representing an image ….

2. The recording showed a child engaged in sexually explicit conduct.

(continued)

- Kuehn conceded that he owned and used the Samsung phone.

- The Samsung phone was used to access several email accounts, each including the name "will" in the email address.[12] One such email address, bigwill00778@gmail.com, was the address connected to the information that began the child pornography possession investigation of Kuehn.

- A Milwaukee police detective determined that the "will" email accounts found on the Samsung phone were used to send and receive hundreds of images of child pornography, and that images found on these email accounts were also found on the Samsung phone.

- Analysis of the Samsung phone showed a Skype account on the Samsung phone under the name "williamkuehn," along with several accounts under the name "willgood" for a Russian search engine used to share child pornography.

---

A child is a person who is under the age of 18 years.

….

3. The defendant knew or reasonably should have known that the recording contained depictions of a person engaged in actual or simulated [sexually explicit conduct].

4. The defendant knew or reasonably should have known that the person []shown in the recording[] … engaged in sexually explicit conduct was under the age of 18 years.

(Modified for the instant case.)

[12] "[W]ill" is not a shortened version of W.S.'s first name.

12

- Based on electronic information associated with the Samsung phone, a Milwaukee police detective determined that the Samsung phone was used to surf a website used to share child pornography. That website was accessed through the Cudahy Public Library's website at the same time that the detective saw Kuehn parked outside that library.

- Kuehn's ex-girlfriend was listed as the Samsung phone's subscriber, and the billing address was a residence belonging to Kuehn's father.

- Call records for the Samsung phone showed calls between that phone and Kuehn's father, W.S., and attorneys who represented Kuehn in several matters.

- The Samsung phone showed Facebook exchanges between Kuehn and his ex-girlfriend, whose name appeared on a contact list in the phone.

- In addition to the evidence connecting Kuehn to the Samsung phone's contents, the State also proffered other-acts evidence alleging Kuehn's longstanding sexual interest in prepubescent children and evidence that several images depicting naked children were torn from library books that Kuehn had checked out from a public library.

¶29     The purported evidence against W.S. can reasonably be summarized as follows, and we consider the alleged evidence in light of the ***Denny*** three-prong framework. To establish motive, Kuehn relies on W.S.'s 1985 conviction for sexual assault of a fourteen-year-old girl. To establish W.S.'s opportunity and a

13

direct connection to the Samsung phone used to access the child pornography, Kuehn relies on W.S.'s listing as the subscriber for one IP address used to access child pornography, W.S.'s alleged presence with Kuehn at locations where the phone was used to download child pornography, and W.S.'s purported access to the Samsung phone in W.S.'s vehicle. We observe that, unlike the evidence linking Kuehn to the accounts on the Samsung phone, Kuehn has not identified any account activity, lawful or otherwise, that suggested W.S. used that phone.

¶30 We agree with the State, Kuehn's trial counsel, and the postconviction court that the evidence against Kuehn was strong, and any connection between W.S. and the crimes Kuehn was charged with was, at best, tenuous. Therefore, counsel could reasonably conclude that, if the case went to trial and the ***Denny*** evidence was presented regarding W.S.'s culpability, there was a very high likelihood that Kuehn would be convicted of fifteen counts of possession of child pornography, each a class D felony with a maximum initial confinement of fifteen years and ten years extended supervision. *See* WIS. STAT. §§ 939.50(3)(d), 948.12(3)(a), and 973.01(2)(b)4. and (d)3. Further, by going to trial, Kuehn would have taken no responsibility for his actions and would have tried to blame the crimes on someone else. Trial counsel could also reasonably conclude that those facts would put Kuehn in an even more negative light with the trial court for purposes of sentencing as opposed to pleading guilty to the five counts of possession of child pornography and accepting responsibility for his actions.

¶31 In sum, we conclude that trial counsel's representation of Kuehn was not deficient, and Kuehn's ineffective assistance of counsel argument fails.[13]

## II. Images Associated With the Crime.

¶32 Next, Kuehn contends that the trial court erred in imposing the child pornography surcharge for the ten images which formed the bases for each of the ten read-in offenses. We begin our analysis by discussing the applicable authorities and our standard of review.

### A. Applicable Authorities and Standard of Review.

¶33 WISCONSIN STAT. § 973.042(2) is the statutory subpart at issue, and we repeat it for context:

> If a court imposes a sentence or places a person on probation for a crime under [WIS. STAT. §§] 948.05 or 948.12 and the person was at least 18 years of age when the crime was committed, the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime. The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.

¶34 Unless the findings are clearly erroneous, we defer to the trial court's findings which determined, as required by WIS. STAT. § 973.042(2), the "number of images … associated with the crime." *See State v. Smiter*, 2011 WI

---

[13] Because of our determination on the deficient performance prong, we need not reach the prejudice prong of the ineffective assistance of counsel analysis. Also, we need not reach the State's argument that Kuehn's guilty pleas waived his ineffective assistance of counsel arguments.

App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (stating factual findings are subject to the clearly erroneous standard).[14]

¶35    Our analysis requires interpretation of a statute. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶45. Both a statute's context and the structure "in which [its] operative language appears" is important to its meaning. *Id.*, ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*

### B. Analysis.

### 1. Trial Court Determination and Matters Not in Dispute.

¶36    The trial court determined the following on this issue: "I think [the ten images are] all associated with the crime, the crime here being the five images

---

[14] No evidentiary hearing was held by the trial court to determine the number of images associated with the crime. But, such an evidentiary hearing was not requested, and Kuehn does not argue on appeal that the statute requires an evidentiary hearing. In addition, Kuehn does not contend that an evidentiary hearing would have changed the result or our discussion of this issue.

that he was convicted of and then the dismissed-and-read-in charges."[15] The postconviction court agreed with the trial court's determination.

¶37    Kuehn concedes that he is liable for the surcharge for the five images which formed the bases for the five counts he was convicted of under WIS. STAT. § 948.12(1m). The parties also do not dispute the following about the read-in offenses images: (a) those are "images" as that term is used in WIS. STAT. § 973.042; (b) Kuehn was over eighteen years old at the time of his conviction; (c) the trial court imposed a sentence under § 948.12(1m); and (d) the images constituted child pornography under Wisconsin law.

¶38    As a result, the sole question we must decide is whether the phrase "image associated with the crime" in WIS. STAT. § 973.042(2) includes, in this factual scenario, the ten images which formed the bases for the read-in offenses.

2.  Meaning of "Associated."

¶39    The word "associated" and the phrase "associated with the crime" are not defined in WIS. STAT. § 967.02 (defining words and phrases in WIS. STAT. chs. 967 to 979), nor is that word or phrase defined in WIS. STAT. § 973.042. Our research shows that § 973.042(2) is the only instance in which the phrase "associated with the crime" is used in the Wisconsin Statutes.

---

[15] The parties do not dispute for purposes of this appeal that Kuehn had in his possession a total of 462 images of what the State contends is child pornography. We do not determine if each of those 462 images were "associated with the crime" under WIS. STAT. § 973.042(2) because the trial court ruled only that the ten images which formed the bases for the read-in offenses were "associated with the crime," and the State does not ask us to reverse that order.

¶40     We may refer to a dictionary to assist us in interpreting statutes. ***Town of Grant v. Portage Cty.***, 2017 WI App 69, ¶40, 378 Wis. 2d 289, 903 N.W.2d 152.  In this context, "associated" is defined as "[c]onnected in thought, mentally related."  OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/11976?rskey=2n1wss&result=2&isAdvanced=false#eid (last visited July 23, 2020).

### 3.  The Ten Images Were Associated With the Crime.

¶41     For the following reasons, we conclude that the ten images were "associated with the crime."

¶42     First, the language of WIS. STAT. § 973.042(2) does not require that, for the surcharge to be imposed, the image must be the basis for a conviction. Other crime surcharge statutes state that those particular surcharges are imposed only for "each conviction" (or virtually identical language).  *See, e.g.,* WIS. STAT. §§ 973.043(1), 973.045(1)(a) and (b), 973.0455(1) (2017-18), and 973.046(1r)(a) and (b).  Here, the legislature has not tied the imposition of a surcharge to only a conviction.  Instead, our legislature cast a wider net and allows a trial court to impose a surcharge when the trial court makes a factual determination that an image is "associated with the crime."

¶43     Second, from a factual standpoint, the ten images were "[c]onnected in thought" and "mentally related" to the crime.  The Presentence Investigation Report shows that the child pornography images which formed the bases for the read-in offenses were received on the same email accounts, and with the same device, as the images associated with the five counts of possession of child pornography for which Kuehn was convicted.  Kuehn did not state at the time of sentencing, and does not argue now, that such information in the Presentence

18

Investigation Report is incorrect. Therefore, that information supports the trial court's determination that those ten images were "associated with the crime."[16]

¶44 In light of the plain language of WIS. STAT. § 973.042(2), and because we defer to the trial court's factual determination of the number of "images associated with the crime," we do not conclude that the trial court's findings were clearly erroneous.

### 4. Kuehn's Arguments.

¶45 Kuehn argues that the trial court's conclusion is incorrect, and we reject each argument.

¶46 First, relying on the restitution statute, WIS. STAT. § 973.20, Kuehn contends that the images which formed the bases for the read-in offenses cannot be "associated with the crime" of possession of child pornography. Section 973.20(1g)(b) and (1r) define "read-in crime" and then state that restitution can be ordered for a "read-in crime." Kuehn asserts that, because the legislature did not place "[e]quivalent" language in WIS. STAT. § 973.042(2) defining what constitutes a read-in crime and did not explicitly state that a read-in crime can be the basis for this surcharge, the legislature meant to exclude read-in offenses from the phrase "associated with the crime." Kuehn's argument fails.

¶47 Because WIS. STAT. §§ 973.042(2) and 973.20 use different phrasing, that does not foreclose the possibility that a read-in offense can be

---

[16] That conclusion is correct whether the phrase "associated with the crime" refers to the crime of possession of child pornography in the abstract or if that phrase refers to the five counts of possession of child pornography for which Kuehn was convicted.

"associated with the crime" under § 973.042(2), and Kuehn gives no viable basis for his argument. Put another way, there is no requirement that each statute which may generally refer to the same subject use the same language. Moreover, §§ 973.042(2) and 973.20 would not use the same statutory language because the legislature did not intend the statutes to be synonymous. While § 973.20(1g)(b) and (1r) refer to only read-in offenses, § 973.042(2) does not necessarily draw the line at only read-in offenses. That statutory subpart refers to a category of images that include, but are not limited to, images which may form a basis for a read-in offense. In those circumstances, the language of the two statutes would not be identical in light of the separate aims of the separate statutes.

¶48 Second, Kuehn argues that the phrase in WIS. STAT. § 973.042(2) which states that a surcharge shall be imposed "[i]f a court imposes a sentence or places a person on probation" will be rendered "superfluous" if the phrase "image … associated with the crime" includes images which formed the basis for read-in offenses. This argument fails because the phrase Kuehn refers to is not a definition of "image … associated with the crime." Rather, that phrase is one condition precedent to imposition of the child pornography surcharge. We fail to see how that language becomes superfluous in this context.

¶49 In sum, we affirm the trial court's determination that the images which form the bases for the ten read-in offenses were "associated with the crime" pursuant to WIS. STAT. § 973.042(2).

### III. Condition of Extended Supervision.

¶50 Finally, Kuehn contends that the trial court's order barring Kuehn from contact with J.S. is overly broad and not reasonably related to his rehabilitation and, as a result, improperly infringes on his constitutional right to

20

freedom of association. We begin our discussion by considering applicable authorities and our standard of review.

## A. Applicable Authorities and Standard of Review.

¶51 WISCONSIN STAT. § 973.01(5) states: "Whenever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision."[17] "Sentencing courts have wide discretion and may impose any conditions of probation or supervision that appear to be reasonable and appropriate." *State v. Stewart*, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165.

¶52 The freedom to associate is a protected constitutional right. *See City of Milwaukee v. Burnette*, 2001 WI App 258, ¶17, 248 Wis. 2d 820, 637 N.W.2d 447. However, "[c]onvicted felons do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime." *Stewart*, 291 Wis. 2d 480, ¶12. Therefore, "[t]he conditions [of extended supervision] may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation." *Id.*, ¶12.

¶53 When a defendant challenges a condition of extended supervision as unreasonable on appeal, the reviewing court must determine whether the trial court erroneously exercised its discretion in ordering the condition. *State v. Miller*, 175 Wis. 2d 204, 208, 499 N.W.2d 215 (Ct. App. 1993). We review *de novo* whether

---

[17] The parties agree that the no-contact order with J.S. will be in effect only for the time that Kuehn is released on extended supervision.

a condition of supervision violates a defendant's constitutional rights. *Stewart*, 291 Wis. 2d 480, ¶12.

## B. Analysis.

¶54  As noted, the trial court ordered Kuehn to have no contact with J.S. The trial court found that Kuehn posed "a grave danger to society." But the State concedes, and we agree, that the trial court did not state its reasoning for the no-contact order with J.S. It would have been preferable for the trial court to state a basis for the no-contact order with J.S. Nonetheless, we may search the record to determine whether to uphold a trial court's exercise of sentencing discretion. *State v. Young*, 2009 WI App 22, ¶29, 316 Wis. 2d 114, 762 N.W.2d 736. Such a basis is found in undisputed facts in the record.

¶55  At the time Kuehn committed these offenses, J.S. had two sons, a ten-year-old and a two-year-old from a previous relationship, and a third son with Kuehn. Kuehn also had two sons with his ex-wife, at that time an eleven-year-old and a nine-year-old. According to the complaint, Kuehn asked an unnamed individual, in an email exchange, if he was interested in "boys or girls[.] I have three sons." Later, Kuehn told that other individual, "[Y]ou can have my boys[,] how much will you pay[?]" The unnamed person replied, "400 for both?"

¶56  The Presentence Investigation Report states and Kuehn does not dispute that, during his pretrial incarceration and up to the time of sentencing, he and J.S. "still [wrote] letters to each other and talk[ed] on the phone" and that "[Kuehn and J.S.] remain a couple and have been in contact … since his incarceration." Indeed, Kuehn's briefing in this court refers to J.S. in the present tense as Kuehn's "girlfriend." Also, at the sentencing hearing, Kuehn's attorney stated that Kuehn "wants to have a relationship with [J.S.] in the future."

¶57    J.S. wants a continuing relationship with Kuehn even after the email exchange in which Kuehn attempted to sell her child and after knowing that Kuehn has possessed child pornography.  A reasonable conclusion is that J.S. does not appreciate the gravity of Kuehn's actions, and J.S. will not protect minors from Kuehn while Kuehn is on extended supervision.[18]

¶58    Kuehn argues that it is unreasonable to have a no-contact order with J.S. when there is already in place an order barring Kuehn from having contact with minors while on extended supervision.  But, the presence of that order does not lead to the conclusion that it is unreasonable for the trial court to impose another order which has the same goal to protect children, and Kuehn gives no reasoning to support his argument.

¶59    We conclude that the no-contact order with J.S. while on extended supervision is not overbroad or unreasonable because it is reasonably related to Kuehn's rehabilitation and protection of the public.  Therefore, the order does not improperly infringe on Kuehn's constitutional right to freedom of association, and the order is not an erroneous exercise of the trial court's discretion.

---

[18] The postconviction court concluded that the no-contact with J.S. order is appropriate because Kuehn must "devote 100% of his attention to his rehabilitation" while on extended supervision.  While we affirm the orders of the trial court and the postconviction court, we agree with Kuehn that this particular aspect of the postconviction court's rationale does not support the no contact order with J.S.  There is neither a starting point nor and end-point to that specific reasoning set out by the postconviction court.  Virtually any activity of a defendant while on supervision could be banned on that basis because almost every activity distracts a defendant from rehabilitation as described by the postconviction court.

## CONCLUSION

¶60     For the foregoing reasons, the judgment and order of the trial court and postconviction court are affirmed.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.